21457.   GORDON v. GEORGIA KRAFT COMPANY.

ARGUED NOVEMBER 14, 1961—DECIDED JANUARY 4, 1962.

*W. H. Key, Wheeler, Robinson & Thompson,* for plaintiff in error.

*Anderson, Walker & Reichert, David Handley,* contra.

MOBLEY, Justice. 1. Mrs. Gordon filed a general demurrer to the petition as amended on the grounds; (1) that the petition revealed that the real issue involved was the location of a boundary line, and therefore not a proceeding contemplated by the Land Registration Law, and (2) the petition as amended did not describe with sufficient definiteness and clarity any particular piece of land to be registered.

While counsel for Mrs. Gordon argue that boundary line disputes are not proceedings contemplated by the Land Registration Law, they fail to cite, and this court has been unable to locate, any authority to that effect.

*Code* § 60-202 provides as follows: "The proceedings under any petition for the registration of land, and all proceedings in the court in relation to registered land, shall be proceedings in rem against the land, and the decree of the court shall operate directly on the land and vest and establish title thereto in accordance with the provisions of this Title as well as upon all persons who are parties to said proceedings, whether by name or under the general designation of 'whom it may concern.'"

The ultimate goal of any petition brought under the Land Registration Law is to determine conclusively the question of title, and it is clear to this court that the petition as amended sets forth a cause of action contemplated by the provisions of the Land Registration Law.

As to the ground of the demurrer alleging that the petition did not describe with sufficient definiteness and clarity any particular piece of land to be registered, it is clear that the tract sought to be registered was sufficiently described.

The petition as amended described the tract by bounding land owners, by acreage, by courses and distances, by reference to back deeds and, finally, by reference to two plats. Such a description meets the requirements of *Code* § 60-207.

In view of the foregoing, the trial court did not err in overruling the general demurrers to the petition as amended.

2. This court, having carefully examined the special demurrers filed to the petition, finds that they are without merit.

3. It is well settled that either the applicant or the defendant in a land-registration proceeding may insist upon a jury trial on

any material issue of fact arising out of exceptions to the examiner's report (*Code Ann.* § 60-304), yet where an examination of the record reveals no material issues of fact and further reveals that the finding of the examiner was demanded by the evidence, then it is not error for the court, instead of empaneling a jury and directing a verdict, to render judgment in accordance with the findings of the examiner. *Saunders v. Staten,* 152 Ga. 142 (4) (108 SE 797); *Reynolds v. Smith,* 186 Ga. 838 (199 SE 137).

4. In her exceptions to the examiner's report, Mrs. Gordon contended that the examiner's findings were contrary to the evidence and not supported by competent evidence.

An examination of the record reveals no basis for this contention. Not only is there abundant evidence to substantiate the examiner's finding that fee-simple title to the 71.327-acre tract sought to be registered was in the applicant, such finding was demanded by the evidence.

The evidence discloses the following: In 1921, Mary A. Russell, a predecessor in title of the applicant, acquired title to a tract of land described as 975 acres, more or less, "being that part of the Glover Place surveyed off to Mrs. Mary A. Russell by W. A. Reid as per plat to be recorded in Clerk's Office Jasper County, Georgia." Following this deed, on record in the clerk's office, there is a notation which reads as follows: "See plat of last two deeds on next page, 639, containing lands of Ben Barron Estate, partitioned by his heirs." Following this notation, there is recorded a plat by W. A. Reid delineating by courses and distances the tract described in the deed preceding it. The deed and plat were recorded on the same date. The 71.327 acres sought to be registered were the southwest portion of the larger tract, and the southwest line of the tract sought to be registered is the exact line delineated on the plat drawn by Reid.

On the other hand, the evidence disclosed that the deeds under which Mrs. Gordon claimed the tract in dispute identified her land as 200 acres, more or less, bounded by the lands of named adjoining owners. Nowhere in her chain of title was the line in dispute defined by physical monuments, measurements, or courses, and nowhere was a plat referred to or attached so as to define the line in dispute.

Applicant proved constructive possession of the tract in dispute under the deed and plat by introducing evidence that owners and tenants had lived on and cultivated portions of the larger tract for a period of 25 years. See *Code* § 85-404.

At no point in the record can there be found any evidence sufficient to raise a material issue of fact regarding any of the evidence outlined above. There is some evidence, which, Mrs. Gordon contends, shows acquiescence by the adjoining owners in the line contended for by her. This evidence will be treated in the following division.

In view of the evidence adduced at the examiner's hearing on the question of title to the land in dispute, it is clear that the findings of the examiner were demanded by the evidence and were not contrary to the evidence. Thus it was not error for the trial court to dismiss the objections of Mrs. Gordon which raised those points.

5. As to the question of acquiescence in the boundary line contended for by Mrs. Gordon, a number of witnesses testified that they had discerned a difference in timber cuttings on either side of the line contended for by Mrs. Gordon. Some of the witnesses described this difference as hedgerow, and there is ample evidence that this hedgerow, though not continuous, could be discerned along the line contended for by Mrs. Gordon.

In addition to this evidence, there was testimony by Tarver Smith, a predecessor in title of Georgia Kraft, who owned the Georgia Kraft tract for about a year and a half, that he did not know that he ever owned the land in dispute and that he, while in possession of the Georgia Kraft tract, had purchased timber from the owner of the 200-acre tract. Mr. Smith also testified as to the existence of the hedgerow, but it is evident from his testimony that he first became aware of the hedgerow shortly before the hearing was held, and he further testified that he did not know where the line was located, i. e., the line separating the Gordon and Georgia Kraft tracts.

In addition to the above, there was testimony by Charlie Tillman that he had cut timber in the past on both places. He also testified as to the hedgerow, but said that the true and original line dividing the Gordon and Georgia Kraft tracts was north-

east of the line contended for by Mrs. Gordon, and most of his testimony indicates that throughout the hearing he was referring to a line entirely different from those contended for by either of the parties.

It is Mrs. Gordon's contention that the foregoing evidence raises a material issue as to the question of establishment of a boundary line by the acquiescence of the adjoining landowners for a period of seven years. We cannot agree with that contention.

*Code* § 85-1602 provides that "acquiescence for seven years, by *acts or declarations* of adjoining landowners, shall establish a dividing line." (Italics ours.) There must be, in order to establish a line by acquiescence, acts or declarations by both adjoining landowners, and mere passive acquiescence will not suffice. *O'Neal v. Ward,* 148 Ga. 62, 63 (95 SE 709).

Considering the evidence in the record which is most favorable to the contention of Mrs. Gordon in the light of the authorities set out above, we come first to the evidence of timber cutting on both sides of the line contended for by Mrs. Gordon. In *White v. Gordon,* 213 Ga. 730 (101 SE2d 759), this court, in dealing with a case similar in many respects to the one under consideration, approved the following charge: "I charge you further that before adjoining landowners would be adjudged to have fixed a dividing line between them by cutting of timber on their respective lands, it would be necessary that each party knew that they were cutting up to what was proposed as the dividing line. In other words, if one party should cut only a part of his timber, and the party owning land adjoining the land of the one cutting a part of the timber should then cut over to the place where his neighbor had stopped cutting, this would not in and of itself fix a line to divide their property; such would not constitute an agreed land line."

In the record before us there is no evidence whatever that any of the adjoining landowners, at the time of the timber cuttings, knew that they were cutting up to what was proposed as the dividing line. Further, there was no showing that any of the timber cutters who testified in court were authorized by any of the adjoining landowners to settle the location of the boundary line. A different result might obtain if there was evidence to the

effect that some of the adjoining landowners knew of the existence of the hedgerow at the time of the timber cuttings on their tract and such line was pointed out by them. No such evidence is in this record.

Tarver Smith's testimony that he thought the tract in question belonged to a predecessor in title of Mrs. Gordon would be some evidence of acquiescence in the line if, from the evidence adduced, it appeared that during the year and one-half in which he owned the larger tract and bought timber from the person who he thought owned the tract in dispute, he knew the location of the line which Mrs. Gordon seeks to have declared established by acquiescence. However, even if that had been the case, the line would not have been established by acquiescence, as less than seven years elapsed from the time Tarver Smith owned the tract and the date of the dispute over the location of the line.

Counsel for Mrs. Gordon have pointed out no further evidence material to the question of acquiescence, and a careful examination of the record fails to disclose any such evidence.

In view of the foregoing, it is clear that the evidence demanded a finding that there was no acquiescence, and it was not error to dismiss the objections of Mrs. Gordon which raised this point.

6. Mrs. Gordon further excepted to the report of the examiner on the ground that the evidence was insufficient to identify the "particular 875 acres, more or less, described in the deed from John G. Barron to Mary A. Russell, dated January 19, 1921 . . . wherein the property was referred to as 975 acres of land and also 850 acres of land and as being a part of the Glover Place surveyed off to Mrs. Mary A. Barron Russell by W. A. Reid as per plat to be recorded in Clerk's Office, Jasper County, Georgia."

This contention is not borne out by the record. The deed referred to in the exception shows that 850 acres north of a road which is shown on the Reid plat were being deeded by a separate conveyance to Mary Russell's brother and that Mary was being deeded a 975-acre tract south of the road. Following the deed, there is recorded the Reid plat showing the tract south of the road, the southwest boundary of that plat being the exact line con-

tended for by the applicant. From 1921 until the date of the last conveyance in 1948, there is an unbroken chain of deeds each of which conveyed the 975 acres of land, many of them referring to the Reid plat.

Thus, it was not error for the trial court to dismiss the exception of Mrs. Gordon which raised this point.

7. Mrs. Gordon also excepted to the finding of the examiner on the ground that the evidence was insufficient to show that the land described in the Reid plat had been physically identified on the ground.

The evidence is undisputed that Frank Lester, a surveyor employed by Georgia Kraft, ascertained the beginning point of the Reid plat on the ground and followed the courses and distances designated on that plat and thereby located on the ground the southwest line shown by the Reid plat. A number of witnesses testified that they had walked that line and further testified as to a fence which crossed the line and several marked trees located on the line. T. J. Collins, a surveyor employed by the examiner, testified that he had walked the line on the ground and further testified that the southwest line of the Reid plat embraced all the land which Mrs. Gordon, by a plat made by a surveyor employed by her, conceded to be in dispute. In addition to the foregoing evidence, witnesses for both sides were asked to identify physical objects located on the ground, e. g., sawdust piles, branches, markings, fences, trees, a spring, etc., with reference to the line shown on the Reid plat. It is palpably clear that the line contended for by Georgia Kraft and indicated on the Reid plat was sufficiently identified on the ground by the evidence adduced at the hearing, and, for this reason, it was not error for the trial court to dismiss the exception of Mrs. Gordon raising this ground.

8. Mrs. Gordon excepted to a special finding by the examiner to the effect that the applicant had succeeded in proving by competent evidence possession, within the meaning of the applicable law, of the 71.327-acre tract which was sufficiently notorious to put Mrs. Gordon and her predecessors on notice of their claim.

In treating the subject of notoriety in constructive possession,

Powell's Actions For Land, (Rev. Ed., 1946) § 310, states as follows: "The true owner should no more be disseized by a clandestine or undisclosed constructive possession than by an actual possession not open and notorious. Consequently, to be adverse, constructive possession must be attended with the element of notoriety. This element may be supplied in a variety of ways. Thus, if A is the true owner of the north half of a lot of land, and B takes actual possession of a portion of the south half of the lot, this alone gives no notice to A that B is claiming any of his land, though B may hold a deed to the entire lot; but if B places the deed on record, A is immediately notified, by the possession as held and by the notice, which the law presumes to flow from the fact of the public recordation of title papers, that B is in constructive possession of the whole lot, and that, therefore, B's possession is adverse to him. Declaratory of this proposition, the Code [*Code* § 85-405] asserts that 'Possession under a duly recorded deed, will be construed to extend to all the contiguous property embraced therein.' . . . The Code section is merely a codification of the rule announced in several decisions of the Supreme Court that public recordation of the deed is such adequate notice to the true owner as to invest the constructive possession with the element of notoriety essential to its being adverse. [Citing *James v. Patterson*, 62 Ga. 527, 531; *Weitman v. Thiot*, 64 Ga. 11 (3), 17; *Tritt v. Roberts*, 64 Ga. 156 (2) ; *Anderson v. Dodd*, 65 Ga. 402; *Kilpatrick v. Strozier*, 67 Ga. 247, 251; *Johnson v. Simerly*, 90 Ga. 612 (16 SE 951). Cf. *Terrell v. McLean*, 130 Ga. 633 (61 SE 485) ; *Bowman v. Owens*, 133 Ga. 49 (65 SE 156).]"

If this be the case where one is claiming constructive possession under the recording of a deed, surely the rule applies *a fortiori* when there is on record, in addition to the deed, a plat describing by courses and distances the boundaries of the tract constructively possessed. Not only was such a plat recorded in the case sub judice, the plat referred to, i. e., the Reid plat, indicated clearly the location of a spring, the existence of which, according to witnesses for both sides, has been known for a great number of years. Since the line contended for by Mrs. Gordon is northeast of this spring and the line contended for by Georgia

Kraft is a great distance southwest of this spring, the Reid plat when recorded in 1921 showed at a glance that the applicant was claiming southwest of the spring. There can be no question that the predecessors in title in the Gordon chain had ample notice of the claim of those who recorded the deed and plat and all those who claimed under them.

Accordingly, it was not error for the trial court to dismiss the exception to the examiner's report which sought to raise a question of fact as to this finding. The examiner's finding was demanded by the evidence.

9. The case under consideration has been dealt with on its merits, and alleged defects in the exceptions to the examiner's final report have been overlooked. Nothing herein said, however, is intended to imply that any of the exceptions were sufficiently specific to comply with the rules of equity which apply when bringing exceptions to the report of the examiner. See *Code Ann.* § 60-304.

*Judgment affirmed. All the Justices concur.*